## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID BANKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 05-2196-KHV** |
| **PAPER, ALLIED-INDUSTRIAL, CHEMICAL** ) | |
| **& ENERGY WORKERS INTERNATIONAL** ) | |
| **UNION, LOCAL 5-0765, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |
| ) | |
| **DAVID BANKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Consolidated With:** |
| **v.** ) | |
| ) | **No. 05-2197-KHV** |
| **SMURFIT-STONE CONTAINER** ) | |
| **ENTERPRISES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

David Banks files suit against Paper, Allied-Industrial, Chemical & Energy Workers International

Union, Local 5-0765 ("PACE"); its successor in interest United Steel, and Forestry, Rubber,

Manufacturing, Energy Allied-Industrial and Service Workers International Union, Local 5-0765 ("USW");

and Smurfit-Stone Container Enterprises, Inc. ("Smurfit-Stone").  The Court refers to PACE and USW

collectively as "the Union."  Plaintiff alleges that all defendants violated Title VII, 42 U.S.C. § 2000e

et seq., and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44-1001 et seq., by

discriminating against him on the basis of race and sex, and violated the Age Discrimination in Employment

Act ("ADEA"), 29 U.S.C. § 621 et seq., and the KAAD, by discriminating against him on the basis of age. Plaintiff also brings a common law wrongful discharge claim against Smurfit-Stone and a claim for breach of the duty of fair representation against the Union. This matter comes before the Court on Defendant Smurfit-Stone's Motion For Summary Judgment (Doc. #70) and Defendant Local 5-0765's Motion For Summary Judgment (Doc. #105), both filed August 28, 2006. For the reasons below, the Court sustains Smurfit-Stone's motion in part and sustains the Union's motion in its entirety.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may

not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the parties opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

## Factual Background

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

Plaintiff is an African-American male, born February 1, 1957.  Smurfit-Stone hired plaintiff in August of 1976, and plaintiff worked at its plant in Kansas City, Kansas throughout his employment.  At the time of his discharge on October 27, 2004, plaintiff worked as a first shift Flexo operator and ran one of three "Flexo" box manufacturing machines.  Jaime Carillo and Reginald Selectman worked with plaintiff on the Flexo machine as Helper and Stacker, respectively.  Plaintiff reported directly to Larry Terry, converting supervisor, who reported directly to Terry Bock, plant superintendent.  Bock transferred to the Kansas City plant in May of 2004.  As plant superintendent, Bock supervised plant operations and was responsible for addressing and resolving plant staffing and productivity issues.  Bock reported directly to

3

plant manager Rod Johnson, who reported directly to general manager Joe Lockwood.

Smurfit-Stone maintains an Equal Opportunity Employment Policy.  See Exhibit 1 attached to

Defendant Smurfit-Stone Container Enterprises, Inc.'s Memorandum In Support Of Summary Judgment

("Smurfit Stone's Memorandum") (Doc. #71) filed August 28, 2006.  In August of 2003, Smurfit-Stone

reaffirmed this policy in a memorandum from general manager Lockwood to all employees.  See Exhibit

3 attached to Smurfit Stone's Memorandum.  In addition to this policy, Smurfit-Stone has developed and

implemented general plant rules and practices to ensure a safe, orderly and productive work environment.

The rules and regulations do not specifically prohibit the use of profanity.

For collective bargaining purposes, the Union represents hourly production and maintenance

employees at the Kansas City plant.  Plaintiff belonged to the Union, and under the collective bargaining

agreement, Smurfit-Stone had the right to terminate employees only for cause.

## I.    Plaintiff's Suspension And First Termination

On August 19, 2004, Bock met with plaintiff, Carillo and Selectman.  Bock had notified Union

steward Paul Loya of the meeting, but he did not attend.  During the meeting, in response to what he

perceived as harassment, plaintiff stated "this is mother-fucking bullshit" and left the meeting.  Plaintiff was

the only person to use profanity at the meeting, but he did not direct it at any particular person.[1]  After the

meeting, Bock and general manager Johnson discussed plaintiff's behavior and Johnson instructed Bock

to suspend plaintiff pending further investigation.  Later that day, Bock informed Union vice president Rose

Hickman of plaintiff's suspension.

---

[1]       Bock presents a different version of events, in which plaintiff directed additional profanity
at him.  For purposes of summary judgment, Smurfit-Stone accepts plaintiff's account of the meeting.

4

During the investigation after his suspension, plaintiff met with plant superintendent Bock, plant manager Johnson, general manager Lockwood, Sarah Chartier (Smurfit-Stone's accountant/human resources representative) and Union vice president Hickman.[2]  At the meeting plaintiff admitted using profanity during the meeting on August 19, 2004, and that his profanity was inappropriate.  Plaintiff contacted Johnson on several occasions after his suspension to apologize for his profanity.  Plaintiff also apologized to the whole company for his profanity.  On an unknown date, Bock and converting supervisor Terry discussed plaintiff's conduct and Terry recommended that if plaintiff was not terminated, his employment be subject to a strict last chance agreement which required him to comply with all company policies and procedures.[3]

On September 2, 2004, plaintiff met with plant superintendent Bock, plant manager Johnson and Union steward Loya.  At the meeting, plaintiff again admitted using profanity during the meeting on August 19, 2004, and that he had behaved inappropriately.  At the conclusion of the meeting, Smurfit-Stone notified plaintiff that it was terminating his employment because of a pattern of violence and insubordination.[4]  Plant superintendent Bock admits that plaintiff was terminated for profanity at the meeting

---

[2]        The record does not reveal the actual date of the meeting.

[3]        Plaintiff attempts to controvert this fact with testimony by Bock.  Bock's testimony, however, only reveals that he cannot recall (1) whether Terry was present at a meeting of other supervisors who discussed plaintiff's behavior on August 19, 2004, see Exhibit G attached to Plaintiff's Response And Memorandum In Opposition To Motion For Summary Judgment By Defendant Smurfit-Stone Container Enterprises, Inc. ("Plaintiff's Response To Smurfit-Stone") (Doc. #114) filed October 2, 2006, or (2) whether Terry was involved in the decision to suspend and eventually terminate plaintiff, see Exhibit F attached to Plaintiff's Response To Smurfit-Stone (Doc. #114).  This testimony does not controvert Terry's recollection of his own conversation with Bock.

[4]        The "pattern of violence" involved one incident between plaintiff and another Smurfit-Stone
(continued...)

on August 19, 2004, but that if plaintiff had not directed the profanity at anybody in particular, he would

not have been terminated.[5]

## II.      Plaintiff's Reinstatement

On September 3, 2004, the Union filed a grievance challenging plaintiff's termination as "unjust"

and demanding that Smurfit-Stone "cease and desist from violating the Collective Bargaining Agreement."

See Exhibit 15 attached to Smurfit-Stone's Memorandum (Doc. #71).  On September 16, 2004, plaintiff

met with Union representatives and company representatives to discuss his grievance.  During the meeting,

plaintiff and plant superintendent Bock agreed to productively work together.  Bock requested that plaintiff

be reinstated, and to regain his employment, plaintiff agreed in writing to uphold company guidelines and

give 100 per cent commitment to his duties.

On September 22, 2004, plaintiff signed a memorandum which provided that he would be

reinstated on the conditions that he (1) treat all management and fellow employees with respect; (2) not

engage in future acts of insubordination, including violence or harassment, job abandonment, or failure to

---

[4](...continued)

employee.  Plaintiff was not disciplined for the incident.

[5]      Bock's deposition testimony is as follows:

Q.      Was Mr. Banks suspended for using profanity in the meeting of August 19, 2004?
A.      Yes, sir.

Exhibit U attached to Plaintiff's Response To Smurfit-Stone (Doc. #114).

Q.      If Mr. Banks had used a profanity in the meeting on August 19, 2004, but had not directed
        it at anybody, would he have been suspended and terminated?
A.      No.

Exhibit V attached to Plaintiff's Response To Smurfit-Stone (Doc. #114).

follow direction, plant rules or procedures; and (3) demonstrate leadership on the plant floor. The memorandum stated that any future act of insubordination would be grounds for immediate termination and that commitment and agreement to the memorandum was required for plaintiff to remain employed. Plaintiff understood that after his reinstatement, any act of insubordination – as defined in the memorandum – would result in immediate termination.

Smurfit-Stone reinstated plaintiff, and Union representatives cautioned him to be especially mindful of his behavior and temper and observe all Smurfit-Stone policies and rules so as not to violate his reinstatement agreement.

## III.    Plaintiff's Second Termination

Shortly after his reinstatement, on October 18, 2004, plaintiff gave plant manager Johnson a Tardy/Early Departure form, see exhibit 18 attached to Smurfit-Stone's Memorandum (Doc. #71), requesting to leave early for an eye doctor appointment the following day, October 19, 2004. The same day, plant superintendent Bock approved plaintiff's absence with the notation "with verification and appointment time." See id. Bock did not require all employees to submit documentation in support of a Tardy/Early Departure form, and no one informed plaintiff that he had to provide verification of his appointment time.[6]

---

[6]    Plaintiff introduces 75 Tardy/Early Departure forms in support of the argument that Bock selectively required verification in a discriminatory manner. Smurfit-Stone objects that these forms were not authenticated. Generally, a document which is not properly authenticated is inadmissible and may not be considered by the Court on summary judgment. See Fed. R. Civ. P. 56(e); D. Kan. R. 56.1; Pound v. Airosol Co., 316 F. Supp.2d 1079, 1083 (D. Kan. 2004). Even without authentication through affidavit or deposition, however, a document may be authenticated by circumstantial evidence which suggests that the document is what it purports to be. See Denison v. Swaco Geographic Co., 941 F.2d 1416, 1423
(continued...)

7

Under Smurfit-Stone attendance policy, an employee who submits a Tardy/Early Departure form at least 16 hours in advance of an absence and provides appropriate documentation will not receive disciplinary points if the absence is approved by management.  An employee who leaves early, without approval or documentation, receives one-half of a point on his or her attendance record.  Three points result in a verbal warning; six points result in a written warning; eight points result in a disciplinary layoff of one day; and ten points result in termination.  At the time of plaintiff's termination, he had accumulated one point under the attendance program.

On October 19, 2004, plaintiff left work at approximately 11:40 a.m.  His shift was scheduled to end at 3:00 p.m., and plaintiff informed his supervisors that his appointment with Dr. Foster was at 1:30 p.m.  After he left work, plaintiff went home to clean up for the appointment.  At home, plaintiff learned that he was mistaken and that his appointment was at 4:20 p.m.  Plaintiff did not call Smurfit-Stone or return to work, but instead visited the office of Dr. Palmeri to discuss lab results before his appointment with Dr. Foster.

On October 20, 2004, plaintiff gave plant superintendent Bock written verification of his

---

[6](...continued)
(10th Cir. 1991) (documents prepared on company letterhead and produced in discovery may be considered on summary judgment without technical authentication).

Here, some of the forms are on Smurfit-Stone letterhead and are marked "confidential," but plaintiff makes no argument that the forms were produced in discovery.  The circumstantial evidence is therefore insufficient to consider the forms without authentication through affidavit or deposition.  Moreover, even if plaintiff had asserted that the forms were produced in discovery, many of the forms suffer from additional defects which prevent authentication through circumstantial evidence.  For example, 30 of the forms are not on Smurfit-Stone letterhead, and another 21 do not bear Bock's signature.

The Court also notes that, even if it were to consider the forms, the forms do not reveal the race, age or sex of respective employees, and the record contains no evidence which would support plaintiff's conclusion that Bock selectively required verification in a discriminatory manner.

appointment with Dr. Foster the previous day. This verification did not indicate the actual time of the appointment, but some time between October 19 and 21, Bock learned that plaintiff's appointment was at 4:20 p.m.[7] On October 21, 2004, plaintiff met with plant superintendent Bock, Union steward Loya and shift supervisor Mike Palmerin regarding his absence on October 19, 2004. During the meeting, Bock demanded that plaintiff provide verification of the actual time of his appointment. Later that day Smurfit-Stone suspended plaintiff pending an investigation of his appointment with Dr. Foster.[8]

Throughout the suspension, plaintiff never provided written verification of his appointment time with Dr. Foster. On October 22 or 23, 2004, he gave plant superintendent Bock written verification of his meeting with Dr. Palmeri's nurse before his appointment with Dr. Foster. In response to this document,

_____

[7]        Some time between October 19 and 21, 2004, Bock instructed Chartier to contact Dr. Foster's office. Chartier did so and learned from Dr. Foster's office manager that plaintiff's appointment was at 4:20 p.m. Plaintiff challenges this evidence as hearsay, but it is not offered for the truth of the matter asserted. See Fed. R. Evid. 803(3); see also Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993) (evidence establishing employer's state of mind when terminating plaintiff's employment not hearsay).

After this action commenced, Smurfit-Stone confirmed by fax from Dr. Foster's office on July 5, 2005, that plaintiff's appointment time was 4:20 p.m. See Exhibit L attached to Plaintiff's Response To Smurfit-Stone (Doc. #114).

[8]        Plant superintendent Bock drafted and gave plaintiff a letter dated October 21, 2004, which stated as follows:

> This letter is to inform you that you are suspended without pay pending an investigation for termination. The incident is as follows; On 10-18-04 you signed a "request to leave early" for a scheduled doctors appt. during work hours . . . David you informed me that you had an 'appt. at noon and had to leave.' We later found this to be a false statement. This is falsification of a company request form and violates our written agreement, signed to adhere to all Company rules and Guidelines on 9-22-04.

Exhibit 24 attached to Smurfit-Stone's Memorandum (Doc. #71). Bock was in charge of the investigation which followed plaintiff's suspension.

Bock stated "this note is not going to save your job." In an attempt to resolve the situation, plaintiff offered to use vacation or sick leave or have an attendance point marked against his record. In response, Bock stated "your people are always looking for a break." Plaintiff did not report these comments to his supervisors or include them in the administrative charges of discrimination which he filed with the Equal Employment Opportunity Commission ("EEOC") on November 19, 2004, and the Kansas Human Rights Commission ("KHRC") on March 15, 2005. On an unknown date, plaintiff complained to Union steward Loya about harassment. Plaintiff did not complain to Smurfit-Stone management regarding any alleged discrimination or harassment, and Loya did not share plaintiff's complaints with Smurfit-Stone management.[9]

Smurfit-Stone terminated plaintiff's employment on October 27, 2004, because, by misrepresenting his appointment time with Dr. Foster**,** he breached his reinstatement agreement.[10] Plaintiff's Employee Change Form states that Smurfit-Stone terminated his employment because he "contin[u]ed to have

---

[9]     Plaintiff admits that as a Union steward, Loya was not a management-level employee.

[10]     Plaintiff's termination letter from plant manager Johnson dated October 27, 2004, stated as follows:

> From the result of our investigation the Company has determined that you failed to live up to your commitment to the Company dated 9/18/04. We have discovered that you lied about having doctors appointed [sic] at noon, you left the plant at 11:38 a.m., and your appointment was not until 4:20 p.m. Because of this the Company has decided to terminate your employment effective immediately 10/27/04.

Exhibit 25 attached to Smurfit-Stone's Memorandum (Doc. #71). The letter is signed by plant manager Johnson, plant supervisor Bock and Union steward Loya. Plaintiff refused to sign the letter.
Bock's testimony reveals that he was part of a management team which reviewed all the facts concerning plaintiff's absence and made the decision to terminate plaintiff's employment on October 27, 2004. See Bock Dep., Exhibit 9 attached to Smurfit-Stone's Memorandum (Doc. #71), at 132:21-24. Other than Bock and Johnson, the record is unclear who comprised the management team.

attendance problems."[11]  See Exhibit Y attached to Plaintiff's Response to Smurfit-Stone (Doc. #114).

Plaintiff did not personally file a grievance of his second termination, but he asked Union steward Loya to file a grievance on his behalf.  Loya told plaintiff that he would have to speak with Union president Joe Aguilar about the matter.  Aguilar decided that before the Union would grieve the termination, plaintiff had to provide verification of his appointment time.  He instructed Loya and Union vice president Hickman accordingly.  Plaintiff never provided the verification, however, and two weeks after his termination, Loya informed plaintiff that the Union would not file a grievance on his behalf.[12]  Some time before Christmas of 2004, plaintiff spoke with Union president Aguilar, who informed him that the Union would not grieve his termination because he had violated his reinstatement agreement.  Plaintiff did not ask the Union executive board to review the decision not to grieve his termination, or otherwise challenge the decision.  Union by-laws are silent as to procedures for such a challenge.

In October of 2004, the Union filed two grievances challenging the termination of Michael Schlax. Schlax, a white employee, was terminated for job abandonment and was under a last chance agreement at the time of his termination.

_____

[11]     Smurfit-Stone objects to plaintiff's Employee Change Form as unauthenticated.  This objection is purely technical; Smurfit-Stone does not argue that the Employee Change Form, which is easily identified as a business document, is not what it purports to be.  As noted above, documents which are not authenticated by affidavit or deposition may nevertheless be authenticated through circumstantial evidence. See Denison, 941 F.2d at 1423.  Here, plaintiff asserts that Smurfit-Stone produced the document in discovery as part of plaintiff's employment file.  Further, the document is on Smurfit-Stone letterhead.  This circumstantial evidence is sufficient to authenticate the document.  See id.

[12]     Plaintiff's recalls that it took "a couple of weeks" to get a response from Loya.  The record includes evidence that on October 29, 2004, plaintiff learned that the Union would not pursue a grievance on his behalf.  Viewing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff learned of the Union's decision no later than November 10, 2004.

As noted above, plaintiff filed an EEOC charge of discrimination on November 19, 2004.  See Exhibit 30 attached to Smurfit-Stone's Memorandum (Doc. #71).  In this charge, plaintiff claimed that Smurfit-Stone and the Union had discriminated against him on the basis of race and age.  Id.  On February 16, 2005, the EEOC issued plaintiff a right to sue letter.  See Exhibit 31 attached to Smurfit-Stone's Memorandum (Doc. #71).

On March 15, 2005, plaintiff filed with the KHRC a charge of race and age discrimination against Smurfit-Stone and the Union.[13]  Id.  Plaintiff's administrative charges did not include allegations of sex discrimination.

In this action, plaintiff asserts various claims against Smurfit-Stone and the Union.  Plaintiff claims that Smurfit-Stone, by terminating his employment, discriminated against him on the basis of race, sex and age and retaliated against him in violation of Title VII, the KAAD and the ADEA, and wrongfully discharged him in violation of the common law of the State of Kansas.  Plaintiff claims that by refusing to grieve his second termination,  the Union discriminated against him on the basis of race, sex and age and retaliated against him in violation of Title VII, the KAAD and  the ADEA, and breached its duty of fair representation.

<u>**Analysis**</u>

**I.      Claims Against Smurfit-Stone**

Plaintiff alleges that Smurfit-Stone discriminated against him by terminating his employment on the basis of race and sex in violation of Title VII and KAAD, and on the basis of age in violation of the ADEA

---

[13]      The record does not indicate whether or when plaintiff received a right to sue letter from the KHRC.

and the KAAD.  Plaintiff also alleges that Smurfit-Stone retaliated against him in violation of Title VII and the KAAD by terminating his employment, and wrongfully discharged him in violation of Kansas common law.[14]

### A.    Race Discrimination

Plaintiff argues that Smurfit-Stone discriminated against him on the basis of race in violation of Title VII and the KAAD by terminating his employment on September 2 and October 27, 2004.  Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The Court applies a disparate treatment analysis to claims that an employer treats some people less favorably because of race, color, religion, sex or national origin.  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).  To prevail on his disparate treatment claim under Title VII, plaintiff must show that the alleged discrimination was intentional.  Plaintiff may establish discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the McDonnell Douglas test.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 824 (1973).

Plaintiff argues that Bock's statement – "your people are always looking for a break" – constitutes direct evidence of discrimination because Bock was referring to African-Americans.  Direct evidence

---

[14]    When arguing plaintiff's discrimination and retaliation claims, neither party distinguishes federal law and state law.  The Court will evaluate the federal and state claims under the same standards.  See Berroth v. Farm Bureau Mut. Ins. Co., 232 F. Supp.2d 1244, 1245 n.1 (D. Kan. 2002) (citing Aramburu v. Boeing Co., 112 F.3d 1398, 1403 n.3 (10th Cir. 1997)) (Title VII); Burney v. County Comm'rs of County of Shawnee, Kansas, 413 F. Supp.2d 1195, 1199-1200 (D. Kan. 2006) (ADEA).

includes "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999) (citations omitted), overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Direct evidence must "speak directly to the issue of discriminatory intent" and must "relate to the specific employment decision in question." Swanson v. Allied Signal, Inc., No. 91-2155-L, 1992 WL 223768, at *2 (D. Kan. Aug. 13, 1992). Statements showing an existing policy which itself constitutes discrimination are direct evidence of discrimination. Heim v. Utah, 8 F.3d 1541, 1546 (10th Cir. 1993) (citing Ramsey v. City & County of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990)). In contrast, statements reflecting a personal bias or prejudice do not constitute direct evidence of discrimination. Mitchell v. City of Wichita, 140 Fed. Appx. 767, 778 (10th Cir. 2005) (citing Shorter, 188 F.3d at 1207). Because statements of personal opinion require the trier of fact to draw inferences from the statements to the alleged discriminatory act, such statements only constitute circumstantial or indirect evidence of discrimination. See id.; see also Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir. 2000) (citing Tomsic v. State Farm Mut. Auto. Ins. Co., 85 F.3d 1472, 1477 (10th Cir. 1996)).

Here, Bock's statement does not constitute direct evidence of discriminatory animus toward plaintiff. The statement is ambiguous and requires an inference or presumption that Bock was referring to African-Americans, as opposed to workers over the age of 40, men, Union members or some other group.[15] Further, the record provides no evidence that in deciding to terminate plaintiff's employment,

---

[15]     Though any ambiguity is generally resolved in plaintiff's favor on summary judgment, the fact that an ambiguity exists necessarily means that an inference must be drawn from the statement. This prevents the statement from being used as direct evidence of discrimination. See Shorter, 188 F.3d
(continued...)

Bock acted on any personal bias.  Even if the Court were to presume that Bock's comment referred to plaintiff's racial group, it at most suggests Bock's personal view that members of that racial group should not be singled out for favorable treatment.   Bock's statement is not direct evidence of an intent to extend unfavorable or discriminatory treatment to plaintiff or members of his racial group.  See Ramsey, 907 F.2d at 1008 (citing Price Waterhouse v. Hopkins, 490 U.S. 228, (1989), superseded on other grounds by statute as stated in Little v. Wichita Coca-Cola Bottling Co., No. 91-1205-B, 1992 WL 223758, at *1 n.1 (D. Kan. Aug. 12, 1992)) (remark based on stereotype does not automatically prove discriminatory animus; plaintiff must show that employer relied on stereotype); see also Tomsic, 85 F.3d at 1477-78 (comment that plaintiff could be expected to lack motivation because her husband earned substantial income not direct evidence of discrimination).  Because the Court finds that plaintiff has not presented direct evidence of discrimination, the Court turns to the familiar three-step McDonnell Douglas analytical framework.  See McDonnell Douglas, 411 U.S. at 802.

Under the burden-shifting framework of McDonnell Douglas, plaintiff has the initial burden of establishing a prima facie case of discrimination in his employment termination.  Plaintiff satisfies this burden by presenting a scenario which on its face suggests that defendant more likely than not discriminated against him.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  If plaintiff can establish a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for his termination.  See Nulf v. Int'l Paper Co., 656 F.2d 553, 558 (10th Cir. 1981).  If defendant does so, the burden shifts back to the plaintiff to show that the stated reason is pretextual.

---

[15](...continued)
at 1207 (direct evidence must prove discrimination without any inference).

For purposes of this motion, Smurfit-Stone concedes that plaintiff has established a prima facie case of race discrimination.[16]  The Court therefore considers the stated reasons for plaintiff's termination.

Smurfit-Stone argues that it first terminated plaintiff's employment for insubordinate profane response during the meeting on August 19, 2004.[17]  Plaintiff's conduct provides a legitimate, nondiscriminatory reason for plaintiff's termination.  See Ray v. Safeway Stores, Inc., 614 F.2d 729, 731 (10th Cir. 1980) (insubordination is legitimate, nondiscriminatory basis for termination); see also Hoffman v. Prof'l Med Team, 394 F.3d 414, 421 (6th Cir. 2005) (disruptive conduct, including use of profanity, widely considered legitimate ground for termination).  Smurfit-Stone argues that it terminated plaintiff for a second time on October 27, 2004, for misrepresenting his appointment on October 19, 2004.  This also constitutes a legitimate, nondiscriminatory basis for plaintiff's termination.  See Connel v. Hallmark Cards, Inc., No. 01-2060-CM, 2002 WL 188467, at *6 (D. Kan. Feb. 1, 2002) (citing Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1399-1400 (10th Cir. 1997)) (dishonesty provides legitimate, nondiscriminatory reason for termination).

Because Smurfit-Stone has set forth legitimate, nondiscriminatory reasons for both terminations, plaintiff has the burden to show that these reasons are pretextual.  The relevant issue is not whether the stated reasons were wise, fair or correct but whether defendant honestly believed in those reasons and

---

[16]     A plaintiff ordinarily makes a prima facie case of race discrimination by showing that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination.  Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002).

[17]     Although Johnson's memorandum regarding plaintiff's first termination indicated that plaintiff was terminated for insubordination and a pattern of violence, see Exhibit 14 attached to Smurfit-Stone's Memorandum, Smurfit-Stone appears to have abandoned the "pattern of violence" as a basis for plaintiff's discharge.

acted in good faith.  Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004).  In examining this issue,

a court must "look at the facts as they appear to the person making the decision to terminate plaintiff."

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000).  The Court's role is not

to second guess an employer's business judgment.  Stover, 382 F.3d at 1076.

A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable fact finder could rationally find them unworthy of credence."  Morgan v. Hilti, Inc., 108 F.3d

1319, 1323 (10th Cir. 1997) (quotations omitted).  While "[t]his burden is not onerous . . . it is also not

empty or perfunctory."  Id. at 1323-24.  A plaintiff typically makes a showing of pretext in one of three

ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e.

unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the

action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten

policy or contrary to company practice when making the adverse employment decision affecting plaintiff.

Kendrick, 220 F.3d at 1230.  More specifically, evidence of pretext may include "prior treatment of

plaintiff; the employer's policy and practice regarding minority employment (including statistical data);

disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective

criteria."  Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328

(10th Cir.), cert. denied, 528 U.S. 815 (1999).

Plaintiff argues that the proffered reasons for his first termination – insubordination and profanity

– were pretextual.  Plaintiff cites Bock's admission that if plaintiff had not directed his profanity at a

particular person, he would not have been suspended or terminated.  For purposes of this motion, the

17

record establishes that plaintiff did not direct his profanity at any particular person.  This evidence creates a genuine issue of material fact whether plaintiff's termination on September 2, 2004, was contrary to normal company policy, as explained by Bock.  Based on the record, a reasonable jury could find that the proffered reasons for plaintiff's first termination are unworthy of belief and a pretext for discrimination.  See Morgan, 108 F.3d at 1323 (contradiction in employer's stated reason for termination is evidence of pretext); see also EEOC v. Town & Country Toyota, Inc., 7 Fed. Appx. 226, 2001 WL 369675, at *4 (4th Cir. Apr. 13, 2001) (contradiction between proffered explanation and supervisor's statements convincing evidence of pretext).[18]

Plaintiff argues that the proffered reason for his second termination – that he misrepresented his appointment to supervisors – is also pretextual.  Plaintiff specifically argues that (1) the record reveals a factual dispute regarding Smurfit-Stone's approval of his absence and the investigation following his suspension on October 21, 2004; (2) Bock's statement's reveal the pretextual nature of his termination; (3) Smurfit-Stone has offered inconsistent reasons for his termination; and (4) Bock selectively required him to provide verification of his appointment on October 19, 2004.

Plaintiff first argues that nobody informed him of the need to provide verification as a condition of leave approval.  Smurfit-Stone, however, did not terminate plaintiff's employment because he initially failed

---

[18]     Smurfit-Stone argues that the Court should apply the same actor inference to overcome any evidence of pretext.  See Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1183 (10th Cir. 2006).  The same actor inference holds that "where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual."  Id. (citing Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991)) (internal quotations omitted).  The inference does not apply to plaintiff's first termination because Smurfit-Stone hired him in 1976 and terminated him roughly 28 years later.

to provide verification of his appointment with Dr. Foster; its decision rested on plaintiff's failure to provide

verification after Bock instructed him to do so at a meeting on October 21, 2004.  It is uncontroverted that

plaintiff never provided the verification which Bock demanded.

Plaintiff cites Bock's statement - "this note is not going to save your job" – as additional evidence

of pretext.  During the investigation of plaintiff's absence, Bock demanded that plaintiff provide verification

of his appointment time with Dr. Foster.  Obviously, the note from Dr. Palmeri's office was insufficient in

this respect, and it is uncontroverted that plaintiff never provided the required verification.  Bock's

statement that an insufficient response was not going to save plaintiff's job does not raise a genuine issue

of material fact whether Bock acted with discriminatory intent toward plaintiff.

Plaintiff also cites Bock's statement – "your people are always looking for a break" – as evidence

of pretext.  As noted, this statement is not direct evidence of discriminatory intent on the basis of race.  To

indirectly establish pretext through such statements, plaintiff must show some nexus between the

discriminatory statements and the employment decision.  Walker v. Faith Techs., Inc., 344 F. Supp.2d

1261, 1277 (D. Kan. 2004).  Although it is clear that the statement was directed at plaintiff, see id., the

import of the statement is greatly tempered because Bock was only one of multiple decisionmakers who

concluded that plaintiff's employment should be terminated, see Antonio, 458 F.3d at 1183.[19]  The record

---

[19]     Any nexus is further strained because, as explained above, Bock's statement at most
suggests his personal view that members of plaintiff's racial group should not be singled out for favorable
treatment, and does not directly suggest an intent to extend unfavorable or discriminatory treatment to
plaintiff or members of his racial group.  Plaintiff does not explain the nexus between Bock's alleged
personal bias and Smurfit-Stone's ultimate decision to terminate his employment.  Indeed, plaintiff
effectively concedes that the conclusions of Smurfit-Stone's investigation were correct by admitting that
he incorrectly informed his supervisors of his appointment time with Dr. Foster and never provided required
(continued...)

contains evidence that a management team, comprised of at least plant manager Johnson and plant superintendent Bock, made the concerted decision to terminate plaintiff's employment. Without evidence of racial animus attributed to any other decisionmakers, no reasonable jury could find pretext based on Bock's statement. See id.

Plaintiff also argues that the stated reason for his second termination is pretextual because Smurfit-Stone offered multiple, inconsistent reasons for the termination. As noted, Smurfit-Stone alleges that plaintiff misrepresented his appointment time on October 19, 2004. Plaintiff argues that his Employee Change Form, which indicates that he was terminated for continued attendance problems, demonstrates that the stated reason is pretextual because the Employee Change Form is both false and inconsistent with the stated reason. The Court disagrees. First, the Employee Change Form is not necessarily false or inconsistent with Smurfit-Stone's stated reason. Smurfit-Stone alleges that it terminated plaintiff because he left work under false pretenses – which could reasonably be considered an attendance problem, as indicated on the Employee Change Form. Furthermore, even if the two reasons are inconsistent, such inconsistency does not automatically suggest pretext. Generally, plaintiff must provide evidence "that shows each of the employer's justifications are pretextual." Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1309-10 (10th Cir. 2005) (en banc) (internal quotes and citations omitted). Any inconsistency must show, for example, that the employer's explanations are "so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks all credibility," or that the employer has changed it explanation under circumstances that suggest dishonesty or bad faith. Id.

--------

[19](...continued)
verification of the appointment time.

Here, any tension between Smurfit-Stone's stated reason for termination and plaintiff's Employee Change Form is not so suspicious as to completely discredit Smurfit-Stone's stated reason. Furthermore, the record does not support the argument that Smurfit-Stone changed its reason for terminating plaintiff's employment; Smurfit-Stone offered both reasons contemporaneously with its termination of plaintiff's employment. The record contains no evidence that Smurfit-Stone acted with dishonesty or bad faith in presenting plaintiff's violation of his reinstatement agreement as its stated reason for terminating his employment. Plaintiff's Employee Change Form is not evidence from which a reasonable jury could find that Smurfit-Stone acted out of discriminatory animus in terminating plaintiff's employment after plaintiff violated his reinstatement agreement.

Finally, plaintiff argues that Bock's selective requirement of verification for absences is evidence of pretext. While Smurfit-Stone admits that Bock did not require verification of all employees seeking leave, the record contains no evidence that this selectivity was in any way based on race. Plaintiff rests this argument on Tardy/Early Departure forms which are inadmissible because they are not authenticated. Even if the Court were to consider such forms, they make no mention of race, sex or age, making it impossible to distill any discriminatory motive from them. Bock's selective requirement of verification is not evidence of pretext in this case.

Because a reasonable jury could find that the proffered reason for plaintiff's first termination is pretextual, Smurfit-Stone is not entitled to summary judgment on plaintiff's race discrimination claim regarding that termination. Because the record contains no evidence of pretext with regard to plaintiff's second termination, Smurfit-Stone is entitled to summary judgment on plaintiff's race discrimination claim regarding that termination.

## B.    Sex Discrimination

Plaintiff argues that Smurfit-Stone discriminated against him on the basis of sex in violation of Title VII and the KAAD by terminating his employment on September 2 and October 27, 2004.  It is well established that Title VII requires plaintiff to exhaust his administrative remedies before filing suit.  Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005).  Exhaustion is a jurisdictional prerequisite.  Id.  To exhaust administrative remedies, plaintiff generally must present his claims to the EEOC or the KHRC as part of his timely filed administrative charge of discrimination and receive a right a right-to-sue letter based on that charge.  Zhu v. Fed. Hous. Fin. Bd., 389 F. Supp.2d 1253, 1276 (D. Kan. 2005).

Here, plaintiff's administrative charges of discrimination did not include a claim of sex discrimination.  This creates a presumption that plaintiff did not intend to assert such a claim.  Moraga v. Ashcroft, 110 Fed. Appx. 55, 60 (10th Cir. 2004) (citing Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1260 (10th Cir. 1998)).  Plaintiff makes no argument to rebut this presumption.  The Court therefore finds that it lacks subject matter jurisdiction to hear plaintiff's sex discrimination claims against Smurfit-Stone, see Shikles, 426 F.3d at 1317, and accordingly dismisses those claims.

## C.    Age Discrimination

Plaintiff argues that Smurfit-Stone discriminated against him on the basis of age in violation of the ADEA and the KAAD by terminating his employment on September 2 and October 27, 2004.  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To prevail on his

ADEA claim, plaintiff must establish that age was a determining factor in the challenged decision. See Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996) (citing Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988)).  Plaintiff need not show that age was the sole reason, but he must show that age "made the difference" in any adverse employment action.  Id. (quoting EEOC v. Sperry Corp., 852 F.2d 503, 507 (10th Cir. 1988)).  Plaintiff may meet this burden by producing direct evidence of age discrimination or satisfying the burden-shifting framework of McDonnell Douglas.  See Burdine, 450 U.S. at 252-56; Kendrick, 220 F.3d at 1225.  In this case, plaintiff does not argue that he has direct evidence of age discrimination.  The Court therefore analyzes his claims under the McDonnell Douglas burden-shifting framework, described above.

For purposes of this motion, Smurfit-Stone concedes that plaintiff has established a prima facie case of age discrimination.[20]  In response to plaintiff's prima facie case, Smurfit-Stone offers the legitimate, nondiscriminatory reasons discussed above.  Plaintiff counters these proffered reasons with the same evidence of pretext.  As noted above, the Court finds that a reasonable jury could conclude that Smurfit-Stone's proffered reasons for plaintiff's first termination – insubordination and use of profanity – are pretextual.  The Court does not find sufficient evidence of pretext, however, with regard to the stated reason for plaintiff's second termination – that plaintiff misrepresented his appointment to his supervisors.

Because a reasonable jury could find that Smurfit-Stone's proffered reasons for the first termination

_____

[20]      Generally, to establish a prima facie case of age discrimination in termination, plaintiff must show that (1) he was a member of the protected age group, over age 40; (2) he was doing satisfactory work; (3) he suffered an adverse employment action; and (4) defendant filled his position with a substantially younger person.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004).

are pretextual, Smurfit-Stone is not entitled to summary judgment on plaintiff's age discrimination claim regarding that termination. Because the record contains no evidence of pretext with regard to plaintiff's second termination, Smurfit-Stone is entitled to summary judgment on plaintiff's age discrimination claim regarding that termination.

### D.    Retaliation

Plaintiff claims that Smurfit-Stone retaliated against him in violation of Title VII and the KAAD by terminating his employment on September 2 and October 27, 2004. Plaintiff's retaliation claims are evaluated under the McDonnell-Douglas framework. See Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006). To establish a prima facie case of retaliation, plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action. See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006) (citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2414-15 (2006)). Smurfit Stone argues that plaintiff cannot establish the first and third elements of his prima facie case.

With regard to the first element, protected opposition to discrimination, Smurfit-Stone argues that plaintiff only complained of harassment, not discrimination. Plaintiff argues that (1) he complained to Union steward Loya about both harassment and discrimination; and (2) he complained about discrimination in the grievance of his first termination filed September 3, 2004.

To establish that he engaged in protected activity, "plaintiff must present evidence showing defendant knew that his concern or complaints related in some way" to his claims of discrimination. Carter

24

v. Meridian Auto. Sys., Inc., 368 F. Supp.2d 1130, 1141 (D. Kan. 2004). General claims of harassment are insufficient to satisfy this element of plaintiff's prima facie case. Smith v. Bd. of County Comm'rs of Johnson County, Kan., 96 F. Supp.2d 1177, 1193 (D. Kan. 2000).

The record does not support plaintiff's argument that he engaged in protected opposition to discrimination. Plaintiff's testimony reveals that his complaints to Loya were based solely on general harassment, not discrimination. Such complaints are insufficient to establish the first element of plaintiff's prima facie claim.[21] Furthermore, plaintiff's grievance of September 3, 2004, does not constitute protected opposition to discrimination. In his grievance, plaintiff complains of "unjust termination," and demands that Smurfit-Stone cease and desist from violating the collective bargaining agreement. Asserting rights under a collective bargaining agreement does not constitute protected activity upon which a claim of retaliation may be asserted. Kendrick, 220 F.3d at 1235 n.13. Where the grievance does not refer to discrimination of any kind, plaintiff has not engaged in protected activity by filing the grievance. Jones v. United Parcel Serv., Inc., 411 F. Supp.2d 1236, 1259 (D. Kan. 2006). Because plaintiff's grievance and complaints to Loya were not complaints of discrimination, plaintiff has not demonstrated a genuine issue of material fact whether he engaged in protected opposition to discrimination. Smurfit-Stone is therefore entitled to

---

[21]    Even assuming that plaintiff did complain to Loya about race or age discrimination, the record indicates that Loya did not share plaintiff's complaints and plaintiff did not otherwise bring his complaints to the attention of Smurfit-Stone management. The complaints to Loya would therefore fail the third element of a prima facie case of retaliation – a causal connection between the protected activity and the materially adverse action – which requires that management knew of the discrimination complaints. See Kendrick, 220 F.3d at 1234-35 (no causal connection without showing that management knew of discrimination complaint); see also Ostler v. Anderson, No. 06-4016, 2006 WL 2666062, at *2 (10th Cir. Sept. 18, 2006) (lack of evidence indicating employer's knowledge of discrimination complaint prevents establishment of causal connection).

summary judgment on plaintiff's retaliation claim.

### E.      Wrongful Discharge

Plaintiff claims that Smurfit-Stone wrongfully discharged him in violation of applicable common law. Kansas subscribes to the doctrine of employment at will.  Absent an express or implied contract of fixed duration, or where recognized public policy concerns are raised, employment is terminable at the will of either party.  Frye v. IBP, Inc., 15 F. Supp.2d 1032, 1046 (D. Kan. 1998).  To date, Kansas has recognized three public policy exceptions to its employment-at-will doctrine: an employee may not be discharged for (1) having filed a workers' compensation claim, see Murphy v. City of Topeka, 6 Kan. App.2d 488, 495-97, 630 P.2d 186, 192-93 (1981); (2) whistleblowing, see Palmer v. Brown, 242 Kan. 893, 900, 752 P.2d 685, 689-90 (1988); or (3) exercising his or her rights under the Federal Employers Liability Act, see Hysten v. Burlington N. Santa Fe Ry. Co., 277 Kan. 551, 563-64, 85 P.3d 1183, 1191 (2004), as modified, No. 90,730, 2004 WL 3142558 (June 1, 2004).

Plaintiff's retaliatory discharge claim does not fall within any of these public policy exceptions, and plaintiff has not persuasively established that Kansas courts would recognize his common law claim for wrongful discharge.  Defendant is therefore entitled to summary judgment on plaintiff's common law wrongful discharge claim.

## II.     Claims Against the Union

Plaintiff alleges that the Union discriminated against him on the basis of race and sex in violation of Title VII and the KAAD, and on the basis of age in violation of the ADEA and the KAAD, by refusing to grieve his second termination.  Plaintiff also alleges that by refusing to grieve his second termination, the Union retaliated against him in violation of Title VII and the KAAD, and breached its duty of fair

26

representation.

### A.    Race and Age Discrimination

Plaintiff's claims of race and age discrimination arise from the Union's refusal to represent him in a grievance of his second termination.  Under Title VII, a labor organization may not discriminate against any individual on the basis of race or sex.  42 U.S.C. § 2000e-2(c)(1).  Under the ADEA, a labor organization may not discriminate against any individual on the basis of age.  29 U.S.C. § 623(c)(1). Plaintiff's claims against the Union are analyzed under the three-step McDonnell-Douglas framework, described above.  See York v. Am. Tel. & Tel. Co., 95 F.3d 948, 955-57 (10th Cir. 1996) (Title VII); Wagner v. Hy-Vee Food Stores, Inc., No. 94-2507-JWL, 1995 WL 716788, at *3 (D. Kan. Nov. 16, 1995) (ADEA).  To establish a prima facie case against the Union under Title VII for failing to file a grievance, plaintiff must show that (1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) the union's actions were motivated by discriminatory animus.[22] Douglass v. United Auto Workers, Local 31, 368 F. Supp.2d 1234, 1246 (D. Kan. 2005) (citing York, 95 F.3d at 955-56).

The Union challenges all three elements of plaintiff's prima facie case.  Because the second and third elements are dispositive, the Court will address only those two elements.

---

[22]    The Title VII elements of a prima facie case for failing to pursue a grievance have not been extended to ADEA claims alleging similar conduct.  The Court, however, borrows established Title VII framework to evaluate plaintiff's ADEA claim in this context.  See Villescas v. Abraham, 311 F.3d 1253, 1257 (10th Cir. 2002) (substantive anti-discrimination provisions of ADEA are patterned on Title VII). The Court will therefore analyze plaintiff's race and age discrimination claims under the same rules.

As to the second element of plaintiff's prima facie case – that the Union permitted Smurfit-Stone's violation of the collective bargaining agreement to go unrepaired, thereby breaching its duty of fair representation – plaintiff argues that the Union ignored his meritorious grievance against Smurfit-Stone. The Union argues that it properly refused to grieve plaintiff's second termination because he did not provide verification of the time of his appointment with Dr. Foster on October 19, 2004.

Title VII does not compel a union to pursue an individual member's grievance if it reasonably disagrees with the basis for that grievance. York, 95 F.3d at 956. Indeed, "[a] union's statutory duty of fair representation does not oblige it to take action on every grievance brought by every member," id. (citing Vaca v. Sipes, 386 U.S. 171, 191-92 (1967)), and a breach of the duty of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith," Vaca, 386 U.S. at 190. Thus, to satisfy the second element of his prima facie cases of discrimination against the Union, plaintiff must show that the Union unreasonably refused to pursue a grievance on his behalf. This inquiry injects a subjective component into the Court's analysis, requiring consideration of the Union's knowledge and motives.

Here, the Court finds as a matter of law that the Union did not act unreasonably in refusing to pursue plaintiff's grievance. Because Smurfit-Stone stated that it terminated plaintiff's employment for misrepresenting his appointment time on October 19, 2004, the Union required plaintiff to provide verification of the appointment time before it would pursue a grievance on his behalf. The Union argues that without such evidence, it could not defend plaintiff's conduct or argue that Smurfit-Stone terminated plaintiff without cause in violation of the collective bargaining agreement. The record is clear that plaintiff never provided verification of his appointment time. The record contains no evidence that the Union was

28

aware of any unlawful or discriminatory conduct by Smurfit-Stone which would properly support a grievance. In fact, plaintiff admits that he did not disclose to any Union representative Bock's alleged discriminatory statements or other evidence of wrongdoing by Smurfit-Stone. Without verification of plaintiff's appointment time or evidence of unlawful discrimination based on plaintiff's race or age, the Union had no basis on which to grieve plaintiff's second termination. On these facts, no reasonable jury could find that by refusing to pursue a grievance of plaintiff's second termination, the Union breached its duty of fair representation.

As to the third element – that the Union was motivated by discriminatory animus – plaintiff relies solely on evidence that in October of 2004, the Union pursued of a grievance on behalf of a white employee whom Smurfit-Stone had terminated for job abandonment while he worked under a last chance agreement. Plaintiff argues that the Union's pursuit of that grievance "smacks of racial discrimination," and the Union responds that the employee was not similarly situated to plaintiff.

An employee is similarly situated to plaintiff when that employee reports to the same supervisor and is subject to the same standards governing performance evaluation and discipline. Kendrick, 220 F.3d at 1232 (citing Aramburu, 112 F.3d at 1404). A court should compare the relevant employment circumstances applicable to plaintiff and those employees alleged to be similarly situated. Id. Plaintiff bears the burden of showing that he is similarly situated to the employees to whom he is comparing himself.[23]

---

[23] The Court recognizes that plaintiff's burden in establishing his prima facie case is not onerous, see Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005), and that nothing requires plaintiff to compare himself to similarly situated employees in establishing his prima facie case, see EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1195 n.6 (10th Cir. 2000). Such evidence, however, is certainly sufficient to establish a prima facie case, see id., and the Court will therefore consider the
(continued...)

Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1178 (10th Cir. 2000).

Here, the record evidence does not create a genuine issue of material fact whether Schlax was similarly situated to plaintiff. See Pulliam v. Gen. Motors, 354 F. Supp.2d 874, 882 (W.D. Wis. 2005) (fact that white employee may have been subject to last chance agreement when he violated work rules not sufficient for jury to find plaintiff similarly situated). Generally, the record does not contain evidence that Schlax and plaintiff reported to the same supervisor or were subject to the same standards governing evaluation and discipline. See Mendelsohn v. Sprint/United Mgmt., 466 F.3d 1223, 1227 (10th Cir. 2006) (reaffirming "same supervisor" rule; in discriminatory discipline cases, plaintiff and employees alleged to be similarly situated must have the same supervisor). More specifically, the relevant employment circumstances of Schlax and plaintiff differ in two respects. First, at the time of Schlax's discharge, his last chance agreement had been in existence for three years and seven months. In contrast, at the time of plaintiff's termination, his reinstatement memorandum was less than six weeks old. Second, and more importantly, Schlax gave the Union verifiable evidence that he had not abandoned his job. Plaintiff gave the Union no evidence to corroborate any grievance.

The Court therefore finds that plaintiff and Schlax were not similarly situated, and that the Union's actions with regard to Schlax are not evidence of discriminatory animus toward plaintiff.[24] Plaintiff has presented no other evidence which suggests discriminatory animus by the Union.

_____

[23](...continued)
evidence presented.

[24]       Even if the Court were satisfied that such evidence suggested discriminatory animus, it would only suggest discrimination on the basis of race, not age. The record contains no evidence of any age difference between Schlax and plaintiff. Thus, at the very least, plaintiff has not established the third element of his prima facie case of age discrimination against the Union.

Plaintiff has therefore failed to establish a genuine issue of material fact with regard to the second and third elements of his prima facie cases of race and age discrimination against the Union, and the Union is entitled to summary judgment on those claims.

### B.      Sex Discrimination

Plaintiff claims that the Union discriminated against him on the basis of sex in violation of Title VII and the KAAD by refusing to represent him in a grievance of his second termination.  As noted above, the Court is without subject matter jurisdiction to hear plaintiff's claims of sex discrimination because he did not include such claims in his EEOC charge of discrimination.   Because exhaustion of administrative remedies is a jurisdictional prerequisite under Title VII, see Shikles, 426 F.3d at 1317, the Court dismisses plaintiff's claims of sex discrimination against the Union.

### C.      Retaliation

Plaintiff claims that the Union retaliated against him in violation of Title VII and the KAAD by refusing to represent him in a grievance of his second termination.  Under Title VII, it is unlawful for "a labor organization to discriminate against any member thereof . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Plaintiff's retaliation claim against the Union is subject to the same standards as his retaliation claim against Smurfit-Stone, described above.  See Thompson v. United Transp. Union, No. 99-2288, 2000 WL 1929963, at *9 (D. Kan. Dec. 19, 2000).  Namely, as one element of his prima facie case, plaintiff must show that the Union retaliated against him because he opposed illegal discrimination by Smurfit-Stone.  See Henderson, 263 F. Supp.2d at 1293 (citing Romero, 615 F.2d

31

at 1310).  As noted above, plaintiff did not engage in protected opposition to discrimination by complaining about harassment to Union steward Loya, a non-management level Union representative, or by grieving his first termination as unjust.  Plaintiff therefore cannot establish a prima facie case of retaliation against the Union, and the Union is entitled to summary judgment on that claim.

### D.    Breach Of The Duty Of Fair Representation

Plaintiff alleges that the Union breached its duty of fair representation by refusing to represent him in a grievance of his second termination.  This claim is subject to a six-month statute of limitations.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 155 (1983) (applying National Labor Relation Act's six-month statute of limitations under 29 U.S.C. § 160(b) to fair representation claims).  A fair representation claim accrues, and the statute of limitations begins to run, "when an employee knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the union's alleged violations."  Spaulding v. United Transp. Union, 279 F.3d 901, 908 (10th Cir. 2002) (internal quotations omitted).

Here, the alleged breach of the duty of fair representation involves the Union's refusal to file a grievance of plaintiff's second termination.  Accepting plaintiff's testimony that he learned of the Union's decision two weeks after his termination, it is clear that he knew or should have known of the act constituting the alleged violation no later than November 10, 2004.  Applying the six-month statute of limitations from that date, plaintiff should have filed his claim by May 10, 2005.[25]

---

[25]    Plaintiff argues that the Union breached its duty each day that it refused to file a grievance on his behalf, continually resetting the statute of limitations and making his claim timely.  Plaintiff's argument is contrary to established case law.  See Spaulding, 279 F.3d at 908

Plaintiff filed his complaint on May 13, 2005.  The original complaint did not include a claim for breach of the duty of fair representation.  This claim was first included in plaintiff's first amended complaint, filed December 15, 2005.  The Court need not determine whether the duty of fair representation claim relates back to the date of the original complaint because even if it did relate back, the claim would be untimely.  The Court therefore finds that plaintiff's claim that the Union breached its duty of fair representation is barred by the six-month statute of limitations.

Moreover, even if this claim were not time-barred, the Court previously noted that a reasonable jury could not find that the Union acted unreasonably in refusing to grieve plaintiff's second termination. Thus, in any respect, plaintiff would be unable to establish his claim.  See Webb v. ABF Freight Sys., Inc., 155 F.3d 1230, 1239-41 (10th Cir. 1998).  The Union is therefore entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that Defendant Smurfit-Stone's Motion For Summary Judgment (Doc. #70) filed August 28, 2006 be and hereby is **SUSTAINED IN PART**.  The Court **SUSTAINS** the motion as to plaintiff's claims of race discrimination under Title VII and the KAAD and age discrimination under the ADEA and the KAAD relating to his termination on October 27, 2004.  The Court also **SUSTAINS** the motion as to plaintiff's claims of sex discrimination and retaliation under Title VII and the KAAD, and plaintiff's claim of common-law wrongful discharge.  The motion is otherwise **OVERRULED**.  Plaintiff's claims of race discrimination under Title VII and the KAAD and age discrimination under the ADEA and the KAAD relating to his termination on September 2, 2004, remain in the case.

33

**IT IS FURTHER ORDERED** that <u>Defendant Local 5-0765's Motion For Summary Judgment</u>

(Doc. #105) filed August 28, 2006 be and hereby is **SUSTAINED**.

Dated this 6th day of December, 2006 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Court

34